**RULE v. UNITED STATES.**

No. 45458.

Court of Claims.

Dec. 3, 1945.

WHITAKER, Judge, dissenting in part.

Llewellyn A. Luce, of Washington, D. C. (Claude I. Parker, Ralph W. Smith, and John Moore Robinson, all of Los Angeles, Cal., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

At the time of his death, April 30, 1936, the decedent had certain life insurance policies which he had taken out on his own life in the total amount of $177,875.50. Decedent's wife, Dorothy B. Rule, was the sole beneficiary under each and all of the nineteen policies (finding 13).

Plaintiff and decedent were married July 1, 1914. At that time and subsequently California had certain community property laws. See Civil Code of California, 1937, §§ 687, 161a, 162, 163, and 164. Prior to July 29, 1927, the wife had only a contingent interest in community property under the community property laws of California as they stood at that time, and, as held in United States v. Robbins et al., 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, since the wife had a mere expectancy during the life of her husband, the husband and wife were not entitled for federal tax purposes to divide the income from community property and the husband was required to pay any tax due upon the whole of such income. Thereafter by section 161a of the California Code, the wife was given a present equal vested interest in community property thereafter acquired.

Plaintiff says that it must be held on the facts as established by the evidence in this case that all of the funds from which the premiums on the policies in question were paid after July 29, 1927, were community property funds in which she had an equal vested interest, and that one-half of the proceeds of policies issued after July 29, 1927, and a portion of the proceeds of policies issued prior thereto should be excluded from the gross estate of the decedent. Fourteen policies amounting to $82,875.50 were issued prior to July 29, 1927, and five in the amount of $95,000 were issued thereafter.

■ If plaintiff has satisfactorily established the proposition that all funds in the joint bank accounts on and after July 29, 1927, were community property, or must be treated as community property, one-half of which she owned, and that all premiums paid after July 29, 1927, were paid out of community property funds, then one-half, or $47,500, of the proceeds of the policies issued after July 29, 1927, should be excluded from the gross estate, and as to the proceeds of $82,875.50 from policies issued prior to such date there should be included in the gross estate only such proportion of the proceeds as the premiums paid prior to July 29, 1927, plus one-half of the premiums thereafter paid from community property funds, bear to the entire premiums paid on such policies from date of issuance to the date of death. Lang, Ex'r, et al. v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319.

The detailed material facts established by the record are set forth in the findings, to which neither party takes exception. In substance they show that neither plaintiff nor her husband had property of more than $5,000 in value when they were married in 1914, and were without any other assets when they returned to Los Angeles in that year. Thereafter plaintiff at no time received income from salaries, commissions, or wages for personal services. However, plaintiff inherited about $6,000 in 1922. From 1914 until about 1931 the decedent was actively engaged in the insurance, finance, and brokerage business. Subsequent to his retirement from active business shortly prior to 1931 he continued until his death to engage in making personal investments from funds of himself and his wife. Between January 1, 1924, and the date of his death, April 30, 1936, the decedent made absolute gifts of property to plaintiff which he had acquired from his income from salaries, commissions and property holdings, which gifts had a total market value of at least $442,547.57 at the date of his death (finding 8). Decedent handled all investments of income of himself and wife, and all sales and purchases of stocks and securities for both himself and his wife. Decedent maintained books of account in which the accounts of himself and his wife were kept separately to show purchases and sales of securities belonging to him and purchases and sales of securities belonging to plaintiff, but all other accounts were kept and maintained jointly and no separate capital accounts were set up on the books for either the decedent or plaintiff. For the years 1924 to 1936 decedent and plaintiff filed joint income tax returns for some years and separate returns for others. All income from salaries, bonuses, and commissions was entirely on account of decedent's personal services, and, in addition, income was shown in these returns for each of the parties from interest, capital gains, sales of stock rights and rentals.

During their entire married life decedent and plaintiff kept and maintained joint tenancy bank accounts in Los Angeles banks in which, during such period, were deposited various amounts derived from personal services of decedent and from stocks, securities, and other property separately owned by decedent and plaintiff. For some years prior to April 30, 1936, neither the decedent nor plaintiff main-

tained separate bank accounts, and all monies from any and all sources which were deposited during the years 1914 to 1936 were deposited upon receipt to these joint tenancy bank accounts. During the greater part of the period 1914 to 1936 expenditures for support and maintenance of decedent and plaintiff amounted to from $20,000 to $24,000 each year, and all of such expenses were paid from the joint tenancy bank accounts. On April 30, 1936, there was a total balance of $16,244.39 in these joint tenancy accounts.

The income and monies from all sources, i. e., from the personal services and property owned by decedent and from property owned by plaintiff, deposited in the joint tenancy bank accounts were commingled to such an extent that it is not possible to determine what part of such income and monies belonged to decedent and what part belonged to plaintiff as earnings and profits from dealings in her property.

The joint tenancy bank accounts, from which all of the insurance premiums were paid by checks drawn by decedent, stood in the names of "O. Rey Rule and/or Dorothy B. Rule as joint tenants with right of survivorship" and these accounts were maintained in the banks under joint tenancy card agreements between decedent and plaintiff and each of such banks.

The total insurance proceeds of $177,-875.50 less the exemption of $40,000 was included in the gross estate in the estate tax return filed by plaintiff. A claim for refund was filed and subsequently rejected.

All or a portion of the insurance proceeds was includible in the gross estate under section 302(g), Revenue Act of 1926 (44 Stat. 9). The applicable Treasury regulation (Art. 25, Reg. 80, 1937 Ed., as amended by T.D. 5032, 1 C.B. 427) provides, so far as here material, as follows:

"Insurance receivable by beneficiaries other than the estate is considered to have been taken out by the decedent where he paid, either directly or indirectly, all the premiums or other consideration wherewith the insurance was acquired, whether or not he made the application. Such insurance is not considered to have been so taken out, even though the application was made by the decedent, if no part of the premiums or other consideration was paid either directly or indirectly by him. Where a portion of the premiums or other consideration was actually paid by another and the remaining portion by the decedent, either directly or indirectly, such insurance is considered to have been taken out by the latter in the proportion that the payments therefor made by him bear to the total amount paid for the insurance."

Defendant insists that plaintiff is not entitled to recover for the reasons, first, that the Commissioner of Internal Revenue held, on substantially the same evidence as is here relied upon, that the total net proceeds was includible in the gross estate because plaintiff's evidence was insufficient to establish that the premiums were paid out of community property funds acquired after July 29, 1927, and that the presumption of California law that where community property funds are commingled with separate funds, and no allocation can be made, all the funds are community property funds is not sufficient in and of itself to overcome the presumption of the correctness of the Commissioner's determination; second, that the meagre evidence introduced by plaintiff does not establish that the premiums were paid out of community property funds acquired after July 29, 1927; and, third, in the alternative, if the agreement between the decedent and his wife evidenced by the joint bank account agreements effected a joint tenancy, then the total amount of the proceeds of the insurance is includible, since there is no evidence to show that the decedent was not the original owner of all the property out of which the premiums were paid.

■ We agree with defendant that plaintiff has not sustained the burden of proof which is cast upon her by the circumstances of this case, of proving that the insurance premiums were paid out of community property funds acquired after July 29, 1927. Plaintiff relies solely upon the presumption of the California law to the effect that when separate funds are commingled with community funds and cannot be allocated, the entire fund is treated as community property. This presumption arises because the law favors community property, but it is rebuttable. It should not be held conclusive in the matter of taxation where there is substantial evidence, as there is here, to indicate that the insurance premiums may have been, and probably were, paid out of other than community property funds. We are here dealing with an estate which is a separate taxable entity, and not with a claim against the husband or wife, and the question is what property should be included

in the gross estate for the purpose of determining the value of the net estate subject to the tax. The mere presumption in favor of community property does not carry to the point of overriding the consideration of the actualities. Freese v. Hibernia Savings, etc., Society, 139 Cal. 392, 73 P. 172; Denigan v. San Francisco Savings Union, 127 Cal. 142, 59 P. 390, 78 Am.St.Rep. 35; New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 372, 38 S.Ct. 535, 62 L.Ed. 1167. We think it is not necessary in a case of this kind for the Government, in order to overcome the presumption in favor of community property, to show a dollar for dollar allocation between separate and community property funds. We have the determination of the Commissioner of Internal Revenue that the premiums paid after July 29, 1927, were not paid out of community property funds, and the presumption as to the correctness of this determination is equal, for the purposes of the burden of proof, to the presumption that commingled separate and community property funds are all community property. The record shows that the Commissioner of Internal Revenue had before him evidence in the form of written statements by plaintiff that the premiums on the insurance policies in question were paid out of the separate property of the decedent rather than out of community property. He also had, as we have here, other evidence to that effect.

Plaintiff does not here contend and has introduced no evidence to show that all or any portion of the premiums paid after July 29 was actually paid from community property funds, but relies solely upon the presumption arising from an alleged commingling of separate and community property funds after that date—we say "alleged commingling" for we think, as hereinafter stated, that the joint bank account funds were held in joint tenancy and were not, therefore, subject to the presumption as to community property.

■ There is no proof to indicate that any of the checks issued by decedent after July 29, 1927, were withdrawals from community property funds rather than from separate funds, or from proceeds from property acquired prior to July 29 in which plaintiff did not have an equal interest. The evidence is sufficient to show that on July 29 both the decedent and plaintiff had considerable separate property and considerable separate funds in the

joint tenancy bank accounts. Since plaintiff had no vested interest in "community property" prior to July 29, 1927, all such "community property" held prior to that date and the proceeds therefrom to July 29 would, for the purpose of this case, occupy the same status as any other separate property of the decedent. Rogan v. Delaney, 9 Cir., 110 F.2d 336, 337.

During the period from July 29, 1927, to April 30, 1936, decedent had income from salaries, bonuses, and commissions of approximately $158,000, and this was community property, if the parties did not agree to otherwise hold it. During the same period annual expenditures of decedent and plaintiff for their support and maintenance amounted to about $24,000. Plaintiff asserted before the Commissioner of Internal Revenue in a verified written protest against a deficiency in this case, that these expenses came out of community property income. She further contended under oath that the insurance premiums paid by decedent "also came from his property or income" and that "his estate was constantly being depleted."

We think plaintiff is not entitled to recover on the assumption that some of the funds which went into the joint bank accounts after July 29, 1927, were community property, because the presumption under the California law is not sufficient in this case and she has not sufficiently sustained the burden of proof which the circumstances of the case place upon her. Cf. Burnet v. Houston, 283 U.S. 223, 228, 51 S.Ct. 413, 75 L.Ed. 991.

Finding 14 shows that plaintiff and decedent signed joint tenancy agreements with certain banks of Los Angeles in which their separate and community property funds were deposited. These were agreements between the decedent and plaintiff as well as with the banks. On their face the agreements made plaintiff and her husband joint tenants as to the funds deposited by or from the property of either. These agreements are not ambiguous and there is no evidence that the parties intended to agree otherwise than that they would hold the funds deposited in such accounts as joint tenants. These joint tenancy agreements, or some of them, were executed prior to July 29, 1927, when the property and income of husband and wife were not strictly community property because the wife had only an expectancy.

■ Under the law of California, husband and wife may agree to hold their property in some way other than as community property. Section 158 of the Civil Code of California authorizes a husband and wife to make any agreement respecting property which either might make if unmarried. Under section 161, Civil Code of California, they may agree to hold property as joint tenants, tenants in common, or as community property. Agreements so made by husband and wife have been recognized and given effect for tax purposes.

■ The execution of the joint bank account agreements is strong evidence that the parties agreed that the funds should be held in joint tenancy and not as community property. Under California law property purchased with joint tenancy funds is considered jointly held property. Wallace v. Reilly, 23 Cal.App.2d 669, 74 P.2d 800. If the insurance premiums were paid out of jointly-owned property, as we think they were, then the surviving widow can only be said to have taken them out to the extent to which she can prove that they were paid out of property originally owned by her; there is no such proof. This is the general rule as to jointly owned property for federal estate tax purposes. Cf. Section 302 (e) of the Revenue Act of 1926.

Plaintiff is not entitled to recover and the petition must be dismissed. It is so ordered.

WHALEY, Chief Justice, concurs.

MADDEN, Judge, and JONES, Judge, took no part in the decision of this case.

WHITAKER, Judge (concurring in part).

I agree that the premiums on the life insurance on decedent's life were paid out of an account held by decedent and his wife as joint tenants and that mere proof that the premiums were paid out of such a fund is not sufficient to show that plaintiff paid any part of the premiums. I do not think it is necessary to decide the case on the assumption that the premiums were paid out of community property, and I withhold concurrence in that part of the opinion.