Louis R. PETERS, Executor of the Will of Grace M. Peters, Deceased

v.

The UNITED STATES.

No. 173–75.

United States Court of Claims.

March 22, 1978.

Cyrus A. Johnson, Sacramento, Cal., Attorney of record, for plaintiff. Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., of counsel.

C. Patrick Derdenger, Washington D. C., with whom was Asst. Atty. Gen., M. Carr Ferguson, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and KASHIWA, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed November 25, 1977, pursuant to Rule 141(b), requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge David Schwartz, filed September 22, 1977, pursuant to Rule 134(h), neither of the parties having filed a notice of intention to except or exceptions thereto and the time for so filing pursuant to the Rules of the court having expired. Upon consideration thereof, without oral argument, since the court agrees with the recommended decision, as hereinafter set forth *, it hereby

---

* Whereas the court adopts the Trial Judge's separate findings of fact, which are set forth in his report filed September 22, 1977, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

grants defendant's motion and adopts the decision as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is entitled to recover to the extent of taxes assessed by reason of the inclusion in the estate of $1,806.96, paid as premiums on the insurance whose proceeds are includable in her estate, and not otherwise, with the amount of recovery to be determined in further proceedings pursuant to Rule 131(c).

## OPINION OF TRIAL JUDGE

SCHWARTZ, Trial Judge:

Plaintiff, the executor of the estate of his mother, seeks to recover, with interest, the amount of Federal estate tax imposed by reason of the Commissioner's inclusion in the estate of the proceeds of an insurance policy on the life of the decedent as well as the amounts of premiums paid on the policy. The questions for decision are whether the gift of the policy by the decedent to her son, made within 3 years of her death, and the payments of premiums on the policy were gifts by the decedent in contemplation of death and therefore includable in her gross estate under section 2035(b) of the Internal Revenue Code, 1954.[1]

On August 17, 1966, Grace Peters, just recently widowed, purchased a 5-year term double-indemnity life insurance policy with a face value of $50,000 and no loan or cash surrender value. The policy insured her own life, and named as beneficiary her son Randy. She transferred ownership of the policy to Randy on January 30, 1968, and died by accidental drowning on October 12, 1969, within 3 years following the transfer.

The transfer was made on Randy's recommendation. He had entered law school in September 1967. From his studies in a course on probate and estate taxes, Randy concluded that on his mother's death the cash benefits paid on the policy would be tied up in probate and subject to estate tax unless she transferred to him the incidents of ownership of the policy. Accordingly, he advised his mother to assign the policy to him in order to avoid both the delays of probate and the diminution of the estate by estate taxes. Both Randy and Mrs. Peters wanted not only to avoid estate taxes but to insure that if she died he would have cash readily available to meet his educational and living expenses: "[w]e simply said, it probably would be a better idea if I were the owner of the policy, and that way the availability of the funds would be immediate to me and we could preserve the capital value of the estate." Her insurance agent confirmed to her that a transfer to Randy would exclude the proceeds of the policy from her estate. She made the actual transfer following discussions of the subject with her accountant and lawyer; the record does not disclose the details of these conversations. Both before and after the transfer, premiums on the policy were paid by checks which were drawn by Mrs. Peters on the joint checking account she shared with Randy.

The intent of Congress in enacting section 2035 was to prevent evasion of the estate tax through *inter vivos* transfers, and the statutory phrase "in contemplation of death" must be construed with this intent prominently in mind. *United States v. Wells*, 283 U.S. 102, 116–18, 51 S.Ct. 446, 75

---

1. Section 2035(b) of the Code provides:

"If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death."

Gifts within 3 years of death are by the Tax Reform Act of 1976 taxable to the estate without any question of the state of mind of the donor. Pub.L. 94–455, § 2035 I.R.C. as amended by 90 Stat. 1848 (1976).

L.Ed. 867 (1931). "Death is 'contemplated' within the meaning of the statutory presumption if the dominant motive for the transfer is the creation of a substitute for testamentary disposition designed to avoid the imposition of estate taxes." *Cleveland Trust Co. v. United States,* 421 F.2d 475, 478 (6th Cir.) *cert. denied,* 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970). Any transfer within 3 years of death is presumed by the statute to be in contemplation of death unless the taxpayer can prove that the transfer was made not in anticipation of and with the thought of death but for dominant "purposes associated with life." *United States v. Wells, supra,* 283 U.S. at 118, 51 S.Ct. 446.

■ The burden of proof is in principle no different for life insurance than for other property. *Landorf v. United States,* 408 F.2d 461, 187 Ct.Cl. 99 (1969). Nevertheless, because life insurance resembles a testamentary disposition so closely, the burden is heavier in the case of a transfer of life insurance than in transfers of other property. *Estate of Compton v. Comm'r,* 532 F.2d 1086, 1088 (6th Cir. 1976); *Berman v. United States,* 487 F.2d 70, 72 (5th Cir. 1973); see H.Rep. No. 2333, 77th Cong., 2d Sess. (1942) 57, 1942–2 Cum.Bull. 373, 417–18. In the case of term life insurance, which has no loan or cash surrender value and can be enjoyed only if the insured dies, the burden becomes heavier still. For, as Judge Learned Hand observed, "[w]hen the property produces no income * * * it may be open to question whether any motive can exclude it from [the transferor's] estate." *Vanderlip v. Comm'r,* 155 F.2d 152, 154 (2d Cir.), *cert. denied,* 329 U.S. 728, 67 S.Ct. 83, 91 L.Ed. 630 (1946) (transfer of life insurance policies whose loan value had been fully depleted by loans).

■ Plaintiff has not met his burden of proof. Indeed, the evidence entirely confirms the statutory presumption that the transfer of the policy was in contemplation of death. The purpose of both transferor and transferee was to enable the proceeds of the policy to avoid the delays of probate and to provide for Randy more fully by avoiding estate taxes on the proceeds. Randy testified that "the whole object of the game was to make sure that it [the policy] was in fact outside the gross estate." Randy wanted the full amount of the proceeds to be immediately available should his mother die; he did not want to have to use the money to pay the tax on the rest of the estate, nor did he want the sum to be diminished in any other way. These were his reasons for recommending that his mother transfer the policy to him, and she concurred. Such reasons, accompanying a gift of no value or enjoyment for the donee during the donor's life, confirm the conclusion that the gift is a substitute for a bequest, and brings the property into the donor's estate. *Vanderlip v. Comm'r, supra,* 155 F.2d at 154.

Plaintiff offers four "life motives" in support of his contention that the transfer was not in contemplation of death. Bearing in mind that a "life motive" is a motive that is consistent with the transferor's continued life, none of the four is valid. Plaintiff argues, first, that Mrs. Peters wished to insure Randy's future education. But Randy received no benefit from the insurance unless Mrs. Peters died, so this motive is not consistent with her continued life. Plaintiff next urges that the transfer was part of a series of informal estate planning transactions by Mrs. Peters. These transactions in fact consisted largely of placing her assets in joint tenancy with Randy. They were prompted by the problems she had experienced after the death of her husband, and were intended to simplify the administration of her estate by avoiding delay in Randy's taking possession of his inheritance. Thus this motive too is inconsistent with her continued life.

Next (somewhat inconsistently with the argument that the transfer was a form of estate planning) plaintiff would portray the transfer as part of an established pattern of lifetime gift-giving. But the asset transferred here had no value at all so long as Mrs. Peters continued to live; if anything, the asset might be a burden to the recipient to the extent of the premiums. Finally,

plaintiff argues that the transfer was prompted solely by Randy's advice, and that tax considerations never entered into Mrs. Peters' own mind. Plaintiff is apparently trying to bring the case within the reasoning of *Kahn v. United States*, 349 F.Supp. 806 (N.D.Ga.1972), where a transfer of group term life insurance was held not to be in contemplation of death when it was motivated solely by the unexplained advice of a trusted friend.

But Grace Peters seems to have been fully advised. She was an active, intelligent woman, who had recently experienced delays in the administration of her husband's estate. She discussed the proposed transfer with her accountant and her lawyer, and received advice whose details are not in the record but which must be presumed to have extended to the tax benefits of a transfer, should she survive for 3 years. Also, she obtained from her insurance agent an affirmative response to her question whether the transfer would have the effect of excluding the proceeds of the policy from her estate. There is every reason on the record to conclude that she shared her son's explicit motives in recommending the transfer—tax avoidance, testamentary disposition and contemplation of her own death.

A final word may be added as to the volume of evidence adduced by plaintiff as to Mrs. Peters' good health and cheerful state of mind. It is all irrelevant. In a quite similar case, Judge Learned Hand directed a verdict against the plaintiff, observing that "the condition of [decedent's] health and his state of mind towards his death had nothing whatever to do with the case." *First Trust & Deposit Co. v. Shaughnessy*, 134 F.2d 940, 942 (2d Cir.) *cert. denied*, 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 442 (1943). Expectation of imminent death is not to be confused with contemplation of death. *Berman v. United States, supra.* Mrs. Peters expected to live. Her death by drowning, within 3 years of the transfer, was accidental. The simple question is whether she had transferred the policy in contemplation of her death. On this question an affirmative conclusion is compelled by the evidence.

### The Premiums Paid

The question of the inclusion in the gross estate of the premium payments on the policy, neglected by the parties in their briefs and arguments, is the more difficult of the two issues to be resolved. Should the premiums, paid out of the decedent's and Randy's joint checking account, be included in the decedent's gross estate as gifts made within 3 years of and therefore in contemplation of death?

■ First, a distinction must be drawn between the premiums paid before and those paid after the transfer of the policy to Randy. There is no basis for including in the estate the amount of premiums paid prior to the time the policy was assigned to Randy. If the money was Mrs. Peters', it was her money, used to buy term insurance under a policy owned by her, on her life. Payment of such premiums has no more connection with her gross estate than the amount she paid for a residence she bought at about the same time. If it was Randy's money, then it was a gift to his mother, became hers and as noted is not to be included in her gross estate. The tax attributable to such premiums must be refunded.

Next is the question of includability in the estate of the several premium payments made between the time of the transfer and Mrs. Peters' death. The burden of proof here, as in the case of the policy itself, is on the plaintiff.

■ The taxpayer who seeks to exclude from a gross estate a portion of insurance proceeds on the ground that premiums were paid out of jointly owned property must prove the extent to which they were paid out of property originally owned by the survivor. If it is impossible to separate the contributions of the joint owners, the payments are deemed to have been made by the decedent, since the estate has not shown otherwise. *Rule v. United States*, 63 F.Supp. 351, 359–60, 105 Ct.Cl. 176, 191 (1945); *Estate of Saunders*, 14 T.C. 534, 541

(1950); *cf.* Treas. Reg. § 20.2040–1(a)(2) (1958).

 Applying the test of these authorities to the facts before us, it appears that no part of the premiums has been shown to have been paid by funds contributed to the joint account by Randy. The joint account from which the premiums were paid had deposits, in the relevant period, of over $50,000 contributed by Mrs. Peters and approximately $5,000 contributed by her son. Randy's contributions are allocable as much or more to his personal expenses as to the premiums. Plaintiff cannot meet the required burden. The payments are thus to be regarded as payments by Mrs. Peters from her funds—a conclusion, however, which does not dispose of the question whether the amounts involved are to be included in her estate.

When Mrs. Peters made these payments, she had effectively transferred all the incidents of ownership of the policy to Randy. Payment by her of the premiums, on a policy owned by Randy, could literally be said to be gifts to him of the dollar amounts involved, made within 3 years of her death, and motivated only by the testamentary motive for the gift of the policy itself. Nevertheless, it would be incongruous to include in the estate both the proceeds of the policy and the premiums paid to an insurance company to keep the policy in force. Had Mrs. Peters not made a gift of the policy, the amount of premiums paid from her assets would of course not be includable in her gross estate. The gift of the policy is now held to be ineffectual to keep the proceeds of the policy from inclusion in the estate. The gift should not inconsistently be given effect to make the premiums includable as well. Baseless inflation of the estate will be avoided by treating the premiums realistically as payments by Mrs. Peters, from her assets, through Randy as nominal owner of the policy, to her insurance company. As such the premiums are not to be included in her estate. No case has been cited in the briefs or otherwise discovered which has on such facts as are here presented included both premiums and proceeds in the gross estate. *See Estate of Silverman,* 521 F.2d 574, 576 (2d Cir. 1975).

It is therefore held that plaintiff is entitled to a refund of the taxes attributable to the inclusion in the gross estate of $1,806.96, the amount of premiums paid on the insurance policy involved, and not otherwise. If the parties cannot agree on the amount of the judgment, the case will be set for proceedings under Rule 131(c).

## CONCLUSION OF LAW

Upon the trial judge's foregoing opinion and the findings of fact, which are adopted by the court, the court concludes as a matter of law that the plaintiff is entitled to recover to the extent of taxes assessed by reason of the inclusion in the estate of $1,806.96, paid as premiums on the insurance whose proceeds are includable in her estate; and not otherwise, the amount of recovery to be determined in proceedings under Rule 131(c).