ESTATE OF EDGAR C. McNAMARA, Deceased, HELEN M. McNAMARA and AMERICAN FLETCHER NATIONAL BANK & TRUST COMPANY, Co-Executors, Petitioner v. COMMISSIONERS OF INTERNAL REVENUE, Respondent
ESTATE OF McNAMARA v. COMMISSIONERS OF INTERNAL REVENUE
Docket No. 10646-79.
United States Tax Court
T.C. Memo 1981-674; 1981 Tax Ct. Memo LEXIS 65; 42 T.C.M. (CCH) 1728; November 24, 1981. *65 D died in Sept. 1976. Within 3 years of his death, D assigned a contributory group term life insurance policy on his life to W. On D's death, W received the proceeds of such policy. Held, such assignment was made in contemplation of death within the meaning of sec. 2035 I.R.C. 1954; therefore, the proceeds of such policy are includable in D's gross estate. George R. Watts, for the petitioner. Richard E. Trogolo, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION
*66 SIMPSON, Judge: The Commissioner determined a deficiency of $ 9,171.96 in the petitioner's Federal estate tax. After concessions by the petitioner, the sole issue for decision is whether the decedent's assignment of a group term life insurance policy on his life to his wife approximately 25 months prior to his death was made in contemplation of death within the meaning of section 2035 of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The decedent, Edgar C. McNamara, died testate on September 6, 1976. Letters testamentary were issued to Helen M. McNamara, wife of the decedent, and American Fletcher National Bank & Trust Company. At the time the petition was filed in this case, Mrs. McNamara resided in Marion County, Ind., and American Fletcher National Bank & Trust Company maintained its principal office in Indianapolis, Ind. The petitioner filed its Federal estate tax return with the District Director of Internal Revenue, Indianapolis, Ind.
*67 From 1962 until his death in 1976, the decedent was an independent insurance agent and employee of Great-West Life Assurance Company (Great-West). In connection with such employment, the decedent was familiar with life insurance and estate planning. In 1962, the decedent acquired a contributory group term life insurance policy from Great-West. Such policy had no cash surrender or loan value. Prior to 1973, Great-West prohibited the assignment of such policy. However, in June 1973, the decedent attended a conference where he learned that such policy could be assigned to a member of his immediate family; such restriction also applied to the assignee of such policy. At such conference, the tax benefits of such an assignment were explained. After becoming aware of such tax benefits, the decedent decided to transfer such policy. In 1974, the decedent revised his estate plan. On July 8, 1974, the decedent executed a document entitled "Absolute Assignment of All Incidents of Ownership," whereby he assigned all of his incidents of ownership in the group term policy to Mrs. McNamara. From the date of such assignment to his death, all premiums due on such policy, $ 382.42, were paid *68 by the decedent through deductions from commission payments due to him from Great-West. No assignment or transfer of ownership of the decedent's other life insurance policies was made during his lifetime. On August 2, 1974, the decedent executed his last will and testament. Mrs. McNamara was the major beneficiary under such will. On such date, the decedent also executed an unfunded insurance trust of which American Fletcher National Bank & Trust Company was trustee. During 1974, Mrs. McNamara was suffering from mental illness. In the fall of 1974, she was voluntarily admitted to the LaRue Carter Hospital where she received treatment for approximately 3 months. During 1973 or 1974, one of the decedent's brothers died of lung cancer. During 1974, another brother of the decedent had rheumatoid arthritis. The decedent's father had died some years earlier at the age of 64. Beginning in 1966, the decedent was treated at St. Vincent Hospital, Indiana University Hospital, the Mayo Clinic, the Cleveland Clinic, and the Lilly Clinic for bursitis, rheumatoid arthritis and rheumatoid lung disease, a cervical disc problem, and a urinary retention problem. However, during the summer *69 of 1974, the decedent's health had improved and he was more active professionally and socially than he had been previously. In July 1976, the decedent learned that he had oat cell carcinoma of the lung, which was the cause of his death. As owner and beneficiary of the group term policy, Mrs. McNamara received the proceeds of such policy, $ 44,164, after the decedent's death. None of such proceeds were included on the Federal estate tax return filed by the petitioner. In his notice of deficiency, the Commissioner determined that the decedent's assignment of the group term policy was a gift made in contemplation of death and that the proceeds of such policy should have been included in the decedent's gross estate pursuant to section 2035. OPINION The sole issue for decision is whether the decedent's assignment of a group term life insurance policy on his life was made in contemplation of death, so that the proceeds of such policy are includable in his gross estate under section 2035. Because such assignment was made within 3 years of death, section 2035(b) establishes a rebuttable presumption that such assignment was so made. [2]
*70 The purpose of section 2035 is "to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." United States v. Wells, 283 U.S. 102, 117 (1931). The fact that the decedent was not in fear of imminent death at the time the assignment was made is not controlling. The crucial question is one of fact--whether, in light of all the circumstances, the dominant motive in making the assignment was the thought of death or a purpose normally associated with life. United States v. Wells, supra; Estate of Honickman v. Commissioner, 58 T.C. 132, 135 (1972), affd. without opinion 481 F. 2d 1399 (3d Cir. 1973); Estate of Gerard v. Commissioner, 57 T.C. 749, 758 (1972), affd. per curiam 513 F. 2d 1232 (2d Cir. 1975). The presumption under section 2035 weighs heavily against the petitioner. Such burden is particularly heavy where the property assigned is so inherently death oriented as a group term life insurance policy which has no cash surrender or loan value. American Fletcher Nat. Bank and Trust Co. v. United States, 222 Ct. Cl. 117,    , 611 F. 2d 360, 364-365 (1979); *71 Peters v. United States, 216 Ct. Cl. 134, 139, 572 F. 2d 851, 854 (1978); Estate of Compton v. Commissioner, 532 F. 2d 1086, 1088 (6th Cir. 1976), affg. a Memorandum Opinion of this Court; Berman v. United States, 487 F. 2d 70, 72 (5th Cir. 1973). Generally, to carry such burden, the petitioner must produce substantial evidence that the decedent's dominant motive for making the assignment was to accomplish some lifetime purpose. Estate of Compton v. Commissioner, supra; Berman v. United States, supra; Landorf v. United States, 187 Ct. Cl. 99, 117, 408 F. 2d 461, 472 (1969). The petitioner's primary argument is that the decedent's dominant motive for the assignment of the group term policy was the peace of mind that the ownership of such policy would give to Mrs. McNamara, by enabling her to provide for her family, and the decedent's desire to help his wife with her estate planning. However, the group term policy had no value other than the right to receive the proceeds of such policy on the decedent's death. Thus, only in the event of the decedent's death could Mrs. McNamara's well *72 being or her estate planning objectives be advanced. As such, the assignment could serve no purpose other than as a substitute for a testamentary disposition by the decedent and the avoidance of estate taxes. Such motive is not consistent with the decedent's continued life. Peters v. United States, supra; Estate of Compton v. Commissioner, supra.
Moreover, the assignment of the group term policy to Mrs. McNamara was made about the same time as the decedent was revising his overall estate plan and had executed a new will and a trust agreement, under which Mrs. McNamara was the major beneficiary. Such circumstances suggest that the assignment was part of a unified testamentary scheme and strongly support the statutory presumption and the Commissioner's determination that the assignment was made in contemplation of death. Commissioner v. Igleheart, 77 F. 2d 704, 710-711 (5th Cir. 1935), affg. 28 B.T.A. 888 (1933); Estate of Honickman v. Commissioner, 58 T.C. at 135; Travelers Bank & Trust Co., Executor v. Commissioner, 29 B.T.A. 88, 94-95 (1933). The petitioner also argues that at the *73 time the decedent assigned the group term policy to his wife he was relatively young and in good health, and that, therefore, he could not have anticipated his death 2 years later. Although the record does show that the decedent had a history of medical difficulties, as of July 1974, none of such difficulties was of a nature which would have indicated that death was imminent. However, expectation of death must not be confused with contemplation of death. The question is not whether the decedent expected imminent death, but whether the assignment of the group term policy was motivated by purposes associated with the distribution of property in anticipation of death. Berman v. United States, supra; Bel v. United States, 452 F. 2d 683 (5th Cir. 1971), cert. denied 406 U.S. 919 (1972). Thus although evidence of poor health is generally indicative of a death-oriented motive for a transfer, evidence of good health, standing alone, is insufficient to carry the petitioner's burden of proving that the decedent had a specific lifetime motive for assigning the group term policy to his wife. Peters v. United States, 216 Ct. Cl. at 141, 572 F. 2d at 855; *74 Berman v. United States, supra at 73; Estate of Compton v. Commissioner, T.C. Memo. 1974-316, affd. 532 F. 2d 1086 (6th Cir. 1976). The petitioner argues next that the assignment of the groupd term policy was part of a pattern of lifetime transfers and that the assignment of such policy was consistent with the decedent's life-oriented motives in making such transfers. However, the record fails to establish the existence of a pattern of life-motivated transfers. On the contrary, the nature of such "transfers" indicates the decedent's unwillingness to part with total control over property which could have value to him during his lifetime. The decedent's other lifetime transfers were the purchasing of a home for his mother-in-law and her sister and an "assignment" of a $ 150,000 whole life insurance policy on his life to his five daughters. While it is true that the decedent did purchase such a home, he only transferred the life use of such property and retained a reversionary interest. With respect to the "assignment" of the whole life policy, the record shows that the decedent retained the ownership of such policy and that the *75 "assignment" was merely the designation of his daughters as beneficiaries of such policy under an installment payment option. Furthremore, even if the petitioner had established a pattern of lifetime transfers, it has not made an affirmative showing that the assignment of the group term policy was part of a pre-existing plan to distribute the decedent's property during his lifetime. See American Fletcher Nat. Bank and Trust Co. v. United States, supra; Estate of Compton v. Commissioner, supra.
The petitioner relies on Landorf v. United States, supra, and Estate of Levine v. Commissioner, T.C. Memo. 1979-118. However, both cases are clearly distinguishable. In Levine, the decedent transferred, at his wife's insistence, whole life policies to her, a motive which the Court found to be primarily life oriented. Here, there is no evidence that Mrs. McNamara requested that the assignment be made or that she was even aware of the transfer. Rather, the assignment appears to have been motivated solely by the decedent's desire to minimize estate taxes through a transfer of property which, unlike the property transferred *76 by the decedent in Levine, had no value while he was alive and which could be transferred without incurring a gift tax liability. Likewise, for the reasons aptly expressed by the courts in American Fletcher Nat. Bank and Trust Co. v. United States, supra, and Estate of Compton v. Commissioner, supra, we believe the petitioner's reliance on Landorf is misplaced. Such cases emphatically pointed out that Landorf was limited to its "specific circumstances" and that on the facts of American Fletcher and Compton and taxpayers in those cases had failed to prove, as has the petitioner here, that any life-related motive contributed to the assignment of the group term policies. In summary, we find and hold that the assignment of the group term policy was made within 3 years of death and that the petitioner has utterly failed to carry its burden of proving that the decedent's dominant motive for making the assignment was to accomplish a lifetime purpose unrelated to the possibility of the decedent's death. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976, unless otherwise indicated.↩
2. Sec. 2035 was amended by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1848, 1854 (sec. 2001(a)(5) and (d)(1)), effective for decedents dying after Dec. 31, 1976. Such section, as so amended, provides that all transfers by a decedent within 3 years of death are includable in the decedent's gross estate. However, such rule is not applicable to gifts with respect to which a gift tax return was not required to be filed, but such exception is not applicable to a transfer of a life insurance policy. Sec. 434 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 317, added sec. 2035(d) to the Code, effective for decedents dying after Dec. 31, 1981. Such section provides that, generally, the value of gifts (other than gifts of life insurance) made by a decedent within 3 years of death will not be included in the gross estate of the decedent. See H. Rept. 97-201 (1981), 1981-38 I.R.S. 86-87. Thus, even as amended by the 1981 Act, for decedents dying after Dec. 31, 1976, sec. 2035↩ provides that a gift of a life insurance policy within 3 years of death is includable in a decedent's gross estate as a gift in contemplation of death.