a period not to exceed 6 months, to afford the parties an opportunity to obtain an administrative resolution of the equitable adjustment to which plaintiff is entitled under Count I of its petition.

**Hal Joseph ROTHGERY, Executor of the Estate of Bernard Anthony Rothgery, Deceased,**

v.

**The UNITED STATES.**

**No. 63–69.**

United States Court of Claims.

March 16, 1973.

Harlan Pomeroy, Cleveland, Ohio, attorney of record, for plaintiff. Baker, Hostetler & Patterson, Cleveland, Ohio, of counsel.

Jane C. Bergner, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Theodore D. Peyser, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

■ This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on May 8, 1972. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by plaintiff, and defendant requested that the court adopt the commissioner's findings but urged that the court adopt a different conclusion of law to give effect to an agreement of the parties made at trial. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, with a modification in the conclusion of law, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, it is concluded (1) that the plaintiff is not entitled to recover on its claim that the Commissioner of Internal Revenue erroneously valued the decedent's stock in Rothgery Motors, Inc., and (2) that the plaintiff is entitled to recover such amount as results from allowing a deduction for reasonable fees and expenses incurred in connection with the prosecution of this case, together with interest as provided by law, and judgment is entered to that effect. The amount of recovery will be determined in accordance with Rule 131(c).

## OPINION OF COMMISSIONER

WHITE, Commissioner:

Hal Joseph Rothgery, the plaintiff, is the son and executor of the estate of Bernard Anthony Rothgery, deceased ("the decedent"). In the present action, the plaintiff seeks to recover federal estate taxes which he paid to the Internal Revenue Service because of deficiencies assessed by that agency in 1965 and 1966.

It is my opinion that the plaintiff is not entitled to recover.

The decedent, a resident of Grafton, in Lorain County, Ohio, died on May 16, 1962. Prior to and at the time of his death, the decedent owned 125 shares, or 50 percent, of the outstanding stock in Rothgery Motors, Inc. ("the corporation"), an Ohio corporation and automobile dealer founded by the decedent and located in Grafton, Ohio. The 125 shares of stock in the corporation owned by the decedent were bequeathed by him in his will to his son, the plaintiff, who already held 124 shares of the corporation's stock. The remaining share of stock in the corporation was held by Jeanne Rothgery, the plaintiff's wife and the decedent's daughter-in-law.

In the federal estate tax return which the plaintiff filed for the decedent's estate, the value of the decedent's 125 shares of stock in the corporation was reported as $7,590, or $60.72 per share. This valuation was reflected in the amount of the estate tax which the plaintiff paid in connection with the return.

The valuation of the corporation's stock at $60.72 per share for federal es-

tate tax purposes was arrived at by using a price-earnings ratio of 12 times the average annual earnings of the corporation for the 4 years immediately preceding the decedent's death, and allocating the resulting amount among the 250 shares of outstanding stock.

After administrative proceedings that will be discussed more fully in another part of this opinion, the Internal Revenue Service assessed and collected from the plaintiff in 1965 and 1966 estate tax deficiencies that were ultimately based upon a valuation of $72,750, or $582 per share, which the IRS placed on the decedent's 125 shares of stock in the corporation.

Therefore, the principal issue before the court in the present case involves a determination of the fair market value of the decedent's 125 shares of stock in the corporation at the time of the decedent's death.

### Value

That the value of $60.72 per share which the plaintiff placed upon the decedent's 125 shares of the corporation's stock in preparing the federal estate tax return was grossly inadequate becomes readily apparent when it is noted that the corporation, at the time of the decedent's death, had on hand cash in the amount of $44,661 and marketable securities having a value of $23,247, and that the corporation's liabilities at the time amounted only to $3,223. Thus, if all other assets of the corporation are excluded and consideration is given only to the liquid assets, the corporation's actual net worth at the time of the decedent's death was $64,685. When this amount is allocated among the 250 shares of stock outstanding at the time of the decedent's death, the resulting figure per share of stock, based on the corporation's liquid assets alone, is $258.71 per share, rather than the $60.-72 per share stated in the federal estate tax return that was filed for the decedent's estate.

Perhaps it should be stated in this connection that the evidence in the record warrants the inference that the corporation's cash and marketable securities on hand at the time of the decedent's death were not being held by the corporation for any business need. It is true that, prior to the decedent's death, the Chevrolet Motor Division of General Motors Corporation (the corporation was a Chevrolet dealer) had expressed to the decedent its dissatisfaction with the location of the corporation's place of business at the time on Mechanic Street in Grafton, and had suggested to the decedent that he relocate the business. This dissatisfaction was also expressed by the Chevrolet Motor Division to the plaintiff following the decedent's death. Despite pressure from the Chevrolet Motor Division, however, the corporation did not move its place of business until 1965, when the building on Mechanic Street was damaged by a tornado. Furthermore, the land and building on Mechanic Street used by the corporation prior to 1965 did not belong to the corporation, but to a trust which had been established by the decedent and which leased the premises to the corporation. Also, it is pertinent to note that the new premises to which the corporation moved in 1965 were not purchased by the corporation, but by the plaintiff and his wife, who leased such premises to the corporation. Thus, it is fair to infer that the corporation's cash and marketable securities on hand at the time of the decedent's death had not been assembled, and were not being held, for use in connection with any anticipated purchase by the corporation of a new place of business.

In addition to the cash and marketable securities previously mentioned, the corporation at the time of the decedent's death had other assets that exceeded the cash and securities in value. Findings 37–49, which are based upon a careful consideration of the sometimes conflicting evidence in the record respecting the value of the corporation's assets, show that such assets had a total value of $149,111 at the time of the decedent's death on May 16, 1962. This represents

the amount that could have been realized from the corporation's assets if the corporation had been liquidated upon the decedent's death. If the corporation's liabilities at the time, in the amount of $3,223, are deducted from the total value of the assets, the result is an actual net worth of $145,878 for the corporation at the time of the decedent's death on May 16, 1962. When the net worth is allocated among the 250 shares of stock outstanding at the time of the decedent's death, the amount per share is $583.51 and the total amount allocable to the decedent's 125 shares of stock is $72,939.

In this connection, the evidence in the record shows that the value of an automobile dealership, such as the corporation, is closely related—and generally corresponds—to the value of its underlying assets.

### Market

■ The plaintiff contends, however, that there was no market for the decedent's stock interest in the corporation after his death on May 16, 1962. This contention is based upon an inference that the acquisition of the decedent's interest in the corporation would have been unattractive to a possible purchaser in view of the circumstances that a purchaser of the decedent's 125 shares would have acquired only a 50 percent interest, and not a controlling interest, in the corporation, that the other 125 shares of the corporation's stock were owned by the plaintiff (124 shares) and his wife (1 share), and that the plaintiff was unwilling to share the management and operation of the corporation with an outsider.

With respect to the plaintiff's contention, it is necessary to begin the resolution of any valuation problem by presupposing a "willing seller." In the present case, therefore, we must begin with the assumption that the decedent's 125 shares of stock in the corporation were not bequeathed by the decedent to his son, the plaintiff, and that such shares were available for sale by the decedent's estate as a "willing seller." If

we begin with such an assumption, it is apparent at once that the plaintiff himself would be a "willing buyer" of the decedent's 125 shares of stock in the corporation. The evidence in the record shows that the plaintiff intended to continue the business of the corporation after his father's death, and that he wished to have control of the corporation in order that his son might have a place in the business. This objective required the acquisition of the decedent's stock interest in the corporation.

The evidence warrants the inference that the plaintiff would have been willing to pay—and from a business standpoint would have been justified in paying—for the decedent's half-interest in the corporation an amount equal to half the value of the corporation's assets, or $72,939, if the decedent's half-interest had been on the market for sale. Although income from the corporation in the form of dividends may have been modest and sometimes nonexistent, the corporation for years had provided the Rothgery family with a good living in the form of salaries, rents, expense accounts, and the use of automobiles; and there was every reason to anticipate that it would continue to do so in the future. In any event, the plaintiff could have recouped his investment by liquidating the corporation, as he would have been empowered to do.

Furthermore, as indicated in findings 53 and 54, the evidence justifies the conclusion that there would have been other potential buyers for the decedent's 125 shares of stock in the corporation at a price of $72,939 if the decedent's estate, as a "willing seller," had made the shares of stock available for sale to persons outside the Rothgery family. It seems unnecessary to extend the present discussion by summarizing findings 53 and 54 in the opinion.

### Fair Market Value

■ For the reasons set out in the preceding portions of the opinion and outlined more fully in the findings of fact, it is concluded that the decedent's

125 shares of stock in the corporation had a fair market value of $72,939, or $583.51 per share, at the time of the decedent's death. Consequently, the figure of $72,750, or $582 per share, which the Internal Revenue Service ultimately used as the value of the decedent's 125 shares of stock in the corporation was not excessive.

### Administrative Proceedings

█ It now becomes necessary to consider an argument made by the plaintiff to the effect that, irrespective of the fair market value of the decedent's 125 shares of stock in the corporation, the 1966 estate tax deficiency assessed by the Internal Revenue Service was improper.

As stated in an earlier portion of the opinion, the value of the decedent's 125 shares of stock in the corporation was reported on the federal estate tax return as $7,590, or $60.72 per share. Following the filing of the estate tax return, the Internal Revenue Service caused an audit of such return to be made. The estate tax examiner who conducted the audit proposed to fix the value of the stock in the corporation owned by the decedent's estate at the book value ($625 per share) shown by the corporation's balance sheet.

The estate tax examiner prepared a formal report, which was transmitted to the plaintiff with a covering letter dated June 18, 1964, from the conference coordinator in the office of the District Director, Internal Revenue Service, Cleveland, Ohio. The transmittal letter stated in part as follows:

In the event you still do not agree to the adjustments, we would like to arrange an informal conference to give you an opportunity to discuss these adjustments further and to submit additional or supporting information. A member of our staff would represent this office at such a conference and he will have full authority to modify the proposed adjustments to the extent warranted by law and regulations on the basis of the information submitted.

Pursuant to the invitation contained in the letter of June 18, 1964, the plaintiff requested a conference with a member of the staff of the conference coordinator. Such a conference was held on August 12, 1964, in accordance with the procedure prescribed in paragraph (c) of Section 601.105 of 26 C.F.R. (Supp. 1964). The only disputed issue raised or discussed at the conference was the proper basis for valuing the estate's stock interest in the corporation. The plaintiff (acting through his counsel) suggested that the adjustment which the estate tax examiner had proposed be modified on the basis of an agreement under which the estate's stock in the corporation would be valued at $132 per share. The conferee representing the Internal Revenue Service requested that the plaintiff submit certain additional supporting information; and stated that he would review the matter and thereafter advise the plaintiff.

At the request of the conferee who represented the Internal Revenue Service at the conference on August 12, 1964, the plaintiff submitted in affidavit form certain additional information on August 13, 1964, in support of the plaintiff's contention concerning the value of the estate's stock in the corporation.

Thereafter, the estate tax examiner wrote a letter to the plaintiff's counsel, stating in part as follows:

Just a note to say that I am enclosing a waiver Form 890 in the amount of $2,854.08, and Affidavit forms on the Attorney Fees and the Accountant's fees. After the forms are completed, they can be returned back to me at this office.

Two adjustments were made. 1) The Closely held stock was adjusted to a total value of $16,500.00 and 2) the Ford Motor Stock was adjusted to $2,309.37.

In the event the Accountants and Attorney fees will [be] different than

estimated on the Form 706, please let me know so that I can re-compute the tax.

The plaintiff's counsel replied on January 4, 1965, returning the waiver form "for recomputation, because of the change in the amount of attorney fees to be paid to me for the handling of this estate."

Subsequently, the estate tax examiner sent to the plaintiff's counsel a corrected waiver form and a recomputation of the tax. These papers showed (among other things) that the value of the estate's stock in the corporation had been increased from $7,590 (as shown on the estate tax return) to $16,500, and that there was an estate tax deficiency in the amount of $3,923.15.

On January 12, 1965, by an executed Form 890, Estate Tax Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment, the plaintiff consented to the assessment of an estate tax deficiency in the amount of $3,923.15; and the plaintiff remitted his check for $4,256.62 in full payment of the deficiency and accrued interest thereon. Thereafter, such deficiency was assessed and the amount of the plaintiff's remittance was credited thereon in full payment of such deficiency.

On July 6, 1965, the plaintiff filed the final account for the decedent's estate with the Probate Court for Lorain County, Ohio. The account was subsequently approved on August 14, 1965, and the estate was closed.

On January 26, 1966—which was more than a year after the plaintiff had paid the 1965 estate tax deficiency—the District Director of Internal Revenue advised the plaintiff that there was a further (or second) deficiency in estate tax based upon a redetermination of the value of the estate's stock interest in the corporation. This time, it was proposed to raise the value of such stock interest to $72,750, or $582 per share. Such action was the result of a review of the estate tax return for the decedent's estate in the office of the Regional Commissioner of Internal Revenue. The resulting deficiency in the amount of $16,200, together with interest thereon in the amount of $3,091.31, was thereafter assessed on October 21, 1966, and paid by the plaintiff on November 2, 1966.

In contending that the assessment of the second estate tax deficiency in 1966 was improper, the plaintiff relies upon the language of paragraphs (c) and (i) of Section 601.105 of 26 C.F.R. (Supp. 1964), particularly the following portions of those paragraphs:

(c) *Informal conference procedure.*
* * *

* * * * * *

(3) *Rules governing informal conferences.* The objective of the informal · conference procedure is to give taxpayers greater opportunity to reach an early agreement with respect to disputed items arising from examinations made by internal revenue agents. * * * It is the responsibility of the conference coordinator or other designated officer to prepare a conference report with respect to each case on which an informal conference is held. This report, which will set forth briefly and concisely the facts and conclusions reached with respect to each issue, will be made available to the. examining officer. In preparing his report the examining officer will give effect to the conference decisions. The examination report and the conference report are subject to review in the Audit Division of the district director's office. The purpose of this review is to insure uniformity in the application of the provisions of the Code, the regulations, and rulings, as well as the general policy of the Service. Occasionally, however, review of a case discloses that the conferee's decision was based on a clearly defined error having a substantial effect on the tax liability. In such an instance, if the change necessary to correct the error is adverse to the taxpayer, he will be offered another informal con-

ference in the matter with the conference coordinator. In the event that an agreement with the taxpayer is reached at the informal conference, the taxpayer will be requested to execute Form 870 or other appropriate agreement form. Any deficiency in tax or additional tax proposed will then be assessed, or any overpayment will be credited or refunded.

\* \* \* \* \* \*

(i) *Regional post review of examined cases.* Regional commissioners review samples of the examined cases closed in their district offices to assure uniformity throughout their districts in the application of the provisions of the Code, regulations, and rulings, as well as the general policies of the Service. In certain circumstances, such as where substantial errors are found or where there is evidence of fraud or collusion, the regional commissioner has authority to reopen the case. \* \* \*

It is the position of the plaintiff that the assessment in 1966 of the second estate tax deficiency against the decedent's estate was in violation of the provisions of Sec. 601.105 of 26 C.F.R. previously quoted, because the Regional Commissioner did not find "substantial errors" or "evidence of fraud or collusion" in connection with the assessment of the first estate tax deficiency following the conference of August 12, 1964.

There is certainly no evidence in the record indicating "fraud or collusion," and it is true that the Internal Revenue Service, in connection with the assessment of the second tax deficiency in 1966, did not expressly inform the plaintiff that "substantial errors" had been found in connection with the assessment of the first estate tax deficiency. On the other hand, the notice to the plaintiff by the IRS that the value of the estate's stock in the corporation would be increased to $72,750 involved by necessary implication a determination that "substantial errors" had been found in the earlier valuation of $16,500 upon which the first estate tax deficiency was based. Furthermore, the facts before the court show that the valuation of $16,500 involved substantial errors.

It appears, therefore, that the Internal Revenue Service did not violate the pertinent provisions of the agency's regulations in assessing the second estate tax deficiency against the decedent's estate, and that such deficiency was not improper.

*Conclusion*

For the reasons stated in the preceding portions of the opinion, it is concluded that the fair market value of the decedent's 50 percent stock interest in the corporation on May 16, 1962, was $72,939, that the figure of $72,750 which the Internal Revenue Service ultimately used as the value of such stock interest was not excessive, and that the second estate tax deficiency which the Internal Revenue Service assessed against the decedent's estate in 1966 was not improper.

It necessarily follows that plaintiff is not entitled to recover with respect to the value of the decedent's stock interest and that the petition should be dismissed in that respect.[1]

1. The parties have stipulated that plaintiff is entitled to recover such amount as results from allowing a deduction for reasonable fees and expenses incurred in connection with the prosecution of this case, together with interest as provided by law.