Fay Lewis **BERMAN**, Executrix of the Estate of Joseph Emile Berman, Plaintiff-Appellee,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 73–1922

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 9, 1973.

Rehearing Denied Oct. 31, 1973.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 431 F.2d 409, Part I, (5th Cir. 1970).

**72**

Joseph E. Brown, Jr., Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown, Acting Chief, Appellate Section, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

James P. Knight, Jr., Jackson, Miss., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Before boarding an airplane at the Jackson, Mississippi, airport, Joseph Emile Berman, a 67 year old food broker and lawyer, purchased a $30,000 flight insurance policy on his life for one dollar, naming his son as beneficiary. The ownership of the policy was immediately assigned to the son. The plane crashed shortly thereafter and Berman was killed.

The question is whether the proceeds of the life policy are includable in Berman's estate for tax purposes. Since the assignment to the son was made within three years of the date of death, the decision turns on whether the estate could prove that the assignment was not made in contemplation of death. Finding that the District Court erred as a matter of law in deciding that the estate carried its burden of proof in this regard, we reverse the judgment which gave the taxpaying estate a refund, and hold that the Government properly collected estate taxes on the proceeds of the policy.

■■■ The assignment of the life insurance policy by Berman to his son was a transfer of property. The value of property transferred in contemplation of death is included in a donor's gross estate for estate tax purposes. 26 U.S.C.A. § 2035. In the case of an insurance policy, the entire death benefit is the policy's fair market value to be included, not merely the amount of the premiums paid. Bel v. United States, 452 F.2d 683 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972); Rev.Rul. 71–497, 1971–2 Cum.Bull. 329. Transfers made within three years of the donor's death are deemed to have been made in contemplation of death "unless shown to the contrary." 26 U.S.C.A. § 2035(b). The statute creates a rebuttable presumption. The essence of a three-year contemplation of death case lies in the estate's ability to prove a negative, i. e., that the subject transfer was *not* in contemplation of death. This is seldom a light burden, and where the property transferred is so inherently death-oriented as life insurance, it is even heavier. The burden is generally carried by producing substantial evidence that the decedent's dominant motive for making the transfer was to accomplish some specific lifetime purpose.

■■ It appears to us that the District Court confused expectation of death with contemplation of death. There is little doubt that Berman expected to live. He was a vigorous man leading an interesting and useful life with great plans for the future. His death was a tragic event. The finding that he did not expect to die on the plane flight is almost compelled by the record, let alone immune under the clearly erroneous standard of review. But the question is not whether he expected to die, but whether the assignment of the policy was motivated by the thought that he might die. To be precise, the estate's burden was not to prove that Berman expected to live or intended to live, as the estate argues, but that the assignment was dominantly motivated by that expectation of continued life.

Recognizing the function Congress intended to be served by the statutory burden imposed by Section 2035, this Court in Bel v. United States, *supra*, affirming

a finding that a life insurance policy was transferred in contemplation of death, stated:

[T]he statutory presumption casts upon the taxpayer the burden of proof as to the dominant, controlling, and impelling motive of the decedent in making a transfer. This means that the taxpayer has the task of persuading a court that in transferring property the decedent was not motivated by purposes associated with the distribution of property in anticipation of death.

452 F.2d at 687. *See also* Bintliff v. United States, 462 F.2d 403, 406 (5th Cir. 1972). Shortly thereafter, this Court again explicitly pointed out the estate's burden in a Section 2035 case in First National Bank at Lubbock v. United States, 463 F.2d 716 (5th Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). We there reversed the District Court's refusal to take the contemplation of death issue from the jury where there was no specific evidence of life motives, noting

We only hold that under the particular circumstances here presented, taxpayer was unable to present specific evidence of life motive.

463 F.2d at 721.

■■ It is not enough for the estate to show that decedent was in good health and did not anticipate immediate death. Section 2035 is not limited to gifts *causa mortis* made in anticipation of a certain event. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1931); Treas.Reg. § 20.2035–1(c). Rather, the estate has the task of persuading the court that the decedent had specific life motives in assigning this insurance policy to his son.

■ We agree with the Government that the evidence, construed most favorably to the estate, falls short of any proof of a dominant life motive in transferring the policy. The only argument the estate makes as to life motive for the transfer involves the disability benefits of the policy. Pointing to the participa-

tion of Berman in his son's business venture, the estate asserts that Berman felt a sense of moral obligation to his son and if he were disabled and unable to continue his support, he wanted to provide otherwise. By the assignment, the son would come into full control of the disability benefits. In effect, the estate argues that in making the assignment Berman contemplated that the plane would crash and he would be physically disabled, but he did not contemplate that he would be killed. But all the evidence submitted by the estate to prove that Berman did not intend to die also proves that he did not intend to be disabled. The argument was not relied upon by the District Court and it is unpersuasive here. There is no evidence that Berman differentiated between the possible disability benefits of the policy and the possible death benefits in making the assignment.

The Government argues that the only plausible motive for the transfer of the policy is death-oriented because (1) the policy would only have value in the event of a disaster which would likely result in death and (2) the decedent was a lawyer presumably aware of the includability of the proceeds in his estate if he did not transfer the policy. We need not go this far. The District Court used an erroneous standard in deciding that Berman's expectancy of life controlled the application of Section 2035. Under the correct standard that there be a dominant life motive for the transfer, there was insufficient evidence to find that Berman did not make the transfer in contemplation of his death.

Reversed.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied. The decision of this Court obviously reverses only that portion of the District Court judgment which was appealed.