Grover H. HOPE, Executor of the Estate
of Beverly J. Hope, Deceased,
Plaintiff-Appellee,

v.

UNITED STATES of America, Internal
Revenue Service, Defendant-Appellant.

No. 81–1521.

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1982.

Ann Belanger Durney, Libero Marinelli, Jr., Attys., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Ginsberg & Forman, Donald J. Forman, Dallas, Tex., for plaintiff-appellee.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

WISDOM, Circuit Judge:

In this estate tax dispute, we are asked to decide whether the proceeds of three term life insurance policies should be included in the estate as gifts in contemplation of death under section 2035 of the Internal Revenue Code of 1954 [26 U.S.C. § 2035]. The District Court for the Northern District of Texas tried the case without a jury on stipulated facts, and held that the decedent transferred the insurance policies but that the transfer was not made in contemplation of death.[1] The estate was granted a refund, and the government appeals. On cross appeal, the estate contends that, although the district court reached the right result, it erred in finding that there was a transfer. We reverse and remand.

I.

At the time of her death in 1970, Beverly J. Hope was the wife of a successful general contractor, Grover H. Hope, and the mother of three children whose ages ranged from ten to fifteen. The success of Grover Hope's company, Chaney and Hope, frequently turned on his ability to obtain performance bonds. Because defaults in the construction business are not uncommon, the decedent and her husband decided to set aside certain assets for the benefit of their children that would be protected from claims by Hope's bonding company in the event of a default on a performance bond. On August 6, 1970, they created a trust for each child, and appointed as trustee Byron A. Whitmarsh, a partner in Chaney and Hope. The trusts were initially funded with $100 transfers from the Hopes. Acting as trustee, Whitmarsh opened checking accounts for the three trusts and deposited each of the $100 transfers.

On May 5, 1970, the decedent executed three applications for term life insurance as a proposed insured, and on August 7 Whitmarsh was designated the proposed owner of the policies. It is a fair inference that Hope contemplated a continuing practice of annually purchasing such policies for the trusts. The insurance company accepted the applications on October 9, 1970, subject to the payment of a $713 premium on each policy. On October 21, Grover Hope withdrew $2100 from the Hopes' joint checking account and deposited $700 in each of the three trust accounts. The next day Whitmarsh, as trustee, paid the premiums. Shortly thereafter, Southwestern Life Insurance Company issued three separate $100,000 renewable term life insurance policies on the decedent's life.[2]

On October 28, 1970, Beverly J. Hope was murdered in her home. Thirty-six years old and in excellent health, she had no reason to believe that death was imminent. Upon her death, the trustee collected $300,000 as the proceeds of the insurance policies. The proceeds were not included in the gross estate on the decedent's federal estate tax return. The Commissioner, seeking to include $150,000 as the decedent's community

1. The district court's opinion is reported at 81-2 USTC ¶ 13,434.

2. Similar policies were executed by Grover Hope and issued by Southwestern Life on his life. The primary beneficiary of each policy was Byron A. Whitmarsh, trustee, for the use and benefit of each child's trust.

share, asserted a deficiency. The estate paid $67,638.27 in tax and sued for a refund. In granting the refund, the district court found that the transaction was in substance a transfer, but that it was life-motivated, and, consequently, not in contemplation of death. We first review the propriety of the court's determination that a transfer occurred.

## II.

At the time in issue,[3] section 2035(a) of the Code provided that:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

At the time of Beverly Hope's death, therefore, inclusion under section 2035 was proper only if (1) there was a transfer, and (2) the transfer was in contemplation of death.

Relying principally on this Court's decision in *Bel v. United States,* 5 Cir. 1971, 452 F.2d 683, *cert. denied,* 1972, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118, the district court concluded that Beverly Hope transferred the policies on her life to the children's trusts. In dismissing the estate's contention that the decedent never owned the policies to begin with, the court responded favorably to the government's age-old argument that the substance, rather than the form of the transaction, should govern: "Even though the trustee actually made the purchases of the policies, in substance the decedent and her husband directly controlled the acquisition of these policies and in effect transferred them to the

trusts.... Decedent made a transfer of the right to receive the proceeds of the life insurance policies." The court quoted language from *Bel* that it found "directly controlling":

> We perceive little seriousness in the argument that a decedent should be permitted to evade the provisions of 2035 by funneling property to various beneficiaries through a third-party conduit.... We think our focus should be on the control beam of the word 'transfer'.... Had the decedent, within three years of his death, procured the policy in his own name and immediately thereafter assigned all ownership rights to his children, there is no question but that the policy proceeds would have been included in his estate. In our opinion the decedent's mode of execution is functionally indistinguishable.

452 F.2d at 691–692.

■ We think the district court was mistaken when it concluded that *Bel* compels a finding that a transfer occurred. Not only is the language the district court relied upon unnecessary to *Bel*'s result, but also the facts this Court confronted there are distinguishable from those we now face. In *Bel,* the decedent annually purchased an accidental death policy on his own life. Although his children solely owned the policies from their inception, the decedent executed the original insurance application himself and paid, with community funds, all of the premiums. The question whether the decedent transferred a policy was addressed only briefly, the Court holding that even though he never formally owned the policy, he purchased it for his children and thus there was a transfer. "The decedent, and the decedent alone, beamed the accidental death policy at his children, for by

---

**3.** Section 2035 has since been amended twice. The Tax Reform Act of 1976 repealed the "in contemplation of death" test and provided that post-1976 transfers made within three years of death would be included in the gross estate regardless of whether the decedent could demonstrate a life-motivated purpose. Pub.L. 94–455, § 2035 I.R.C. as amended by 90 Stat. 1848 (1976). Congress was apparently troubled by the "substantial litigation concerning the mo-

tives of decedents". H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. 12 (1976), U.S.Code Cong. & Admin.News 1976, pp. 2897, 3366.

The Economic Recovery Tax Act of 1981 eliminated, with certain exceptions, for persons dying after 1981 § 2035(a)'s requirement that the value of a gift made within three years of death be included in the gross estate. Pub.L. 97–34, Title IV, §§ 403(b)(3)(B), 424(a), 95 Stat. 301, 317 (1981).

paying the premiums he designated ownership of the policy and created in his children all of the contractual rights to the insurance benefits." 452 F.2d at 691.

*Bel* holds that there is no practical difference between, on the one hand, purchasing a policy in one's own name and then transferring it, and on the other, purchasing the policy in someone else's name. These two acts, identical in practice, should therefore have the same tax consequences. There can be a practical difference, however, between buying insurance for someone and giving that person money, even if the money is eventually used to purchase insurance. Unlike Mr. Bel, Beverly Hope bought no policies and paid no premiums; she only gave cash, in trust, to her children. The government argues that the district court was correct in holding that the decedent and her husband provided the funds to the trustee, and that in substance it was the decedent who procured the policies and transferred them to the trust. We cannot accept this contention. Although Beverly Hope did fill out the initial application form for the insurance policies, the court could not conclude from this alone that, in the language of *Bel,* she "beamed the proceeds at her children". Such a conclusion would require a factual determination that the trustee, Byron A. Whitmarsh, had no discretion to invest the trust assets, but was in fact controlled by the decedent, acting as the decedent's agent when he paid the premiums. Nowhere, however, was it stipulated that the grantor controlled the trustee, or that the trustee's powers were confined. On the contrary, the trust agreement is irrevocable and vests broad powers in the trustee, particularly with regard to investments.[4] Consequently, we hold that the district court erred when it decided, as a matter of law, that a transfer occurred for purposes of section 2035. We therefore reverse its holding and remand the case to the district court for further factfinding on the question whether the trustee acted as the grantor's agent when he purchased the policies.

The government's reliance on *Detroit Bank & Trust Company v. United States,* 6 Cir. 1972, 467 F.2d 964, *cert. denied,* 1973, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590, is misplaced. In that case, the decedent entered into a trust agreement with the

---

**4.** An examination of the trust agreement reveals the breadth of the trustee's authority. We direct the district court's attention particularly to paragraph F, "Powers, Rights, Privileges and Duties of Trustee," which provides, in part:

  1. *General Authority.* The Trustee shall have the same power and authority to deal with any and all properties of the Trust as if the Trustee owned such properties in fee, including the authority to manage, invest, reinvest, sell, encumber, convey, subject however, to the trust and limitations provided for in this indenture, and without in any way limiting the foregoing general authority, the Trustee shall have the powers, rights, privileges and duties hereinafter specified.

  2. *Investments.* The Trustee may invest and reinvest any and all monies in real or personal property, or both, of any character, as the Trustee, in his absolute discretion sees fit, without restriction to the class of investments which a Trustee is or hereafter may be permitted by law to ·make. Further, the Trustee is hereby granted the power to retain any property constituting the original corpus of the Trust or any property added by the Settlors or anybody else hereafter, regardless of the character of such property or whether it shall be such as then will be authorized by law for trust investments or whether it shall leave a disproportionately large part of the trust estate invested in one type of property. The Trustee shall not incur any liability for retaining any of such property pursuant to this paragraph. The Trustee may sell or exchange any or all of said assets if and whenever the Trustee shall deem it advisable. For convenience, the Trustee is authorized to hold trust investments in his own name individually, or in his own name as Trustee, or in the name of any nominee which the Trustee may select.

    \*   \*   \*   \*   \*   \*

  12. *Purchase and Maintain Life Insurance and Annuities.* The Trustee shall have the discretion whether to acquire, and whether to continue in force, contracts of life insurance or annuities for the Trust. The Trustee may purchase and maintain such policies of life insurance, in such amounts, on the life or lives of such persons as he deems advisable, provided, however, that the Trust shall be the owner and beneficiary of any such policy; and further, the Trustee is expressly authorized to acquire, purchase and continue in force contracts of life insurance on the life of either or both of the Settlors.

bank as trustee, and transferred $9600 to the trust to acquire $100,000 of insurance on his life. The trust was irrevocable and nominally beyond his control, but it provided for him to continue to make contributions to the trust for the payment of premiums, and its terms limited the trustee's power by requiring it to expend the funds solely for this purpose. Faced with a factual finding that the trustee had no discretionary investment powers of its own and that it was controlled by the grantor, the court held, citing *Bel,* that a transfer had been made.[5] Because no finding has been made in this case that an agency relationship existed between the decedent and trustee, we view *Detroit Bank & Trust* as inapposite.

### III.

At the relevant time, section 2035 required the inclusion in the gross estate of property transferred "in contemplation of death". Subsection (b) of that section specified a rebuttable presumption that a transfer made within three years of death was made in contemplation of death.[6] Both the government and the estate agree that the presumption applies in this case. The question we are asked to decide is whether the district court erred in concluding that the presumption was overcome. We hold that it did.

■ The congressional goal in enacting section 2035 was to reach inter vivos transfers of property used as substitutes for testamentary dispositions. *United States v. Wells,* 1931, 283 U.S. 102, 116–18, 51 S.Ct. 446, 451–452, 75 L.Ed. 867, 875–76. "Death is 'contemplated' within the meaning of the statutory presumption if the dominant motive for the transfer is the creation of a substitute for testamentary disposition designed to avoid the imposition of estate taxes." *Peters v. United States,* Ct.Cl. 1978, 572 F.2d 851, 854, *quoting Cleveland Trust Co. v. United States,* 6 Cir. 1970, 421 F.2d 475, 478, *cert. denied,* 1970, 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46.[7] Catego-

---

**5.** Both *Detroit National Bank* and *Bel* rely on *Chase National Bank v. United States,* 1929, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, for the proposition that the word "transfer" must be construed broadly. There the Supreme Court stated that a

> 'transfer' ... cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected as his death, of having it pass to another.

278 U.S. at 337, 49 S.Ct. at 128, 73 L.Ed. at 408–09.

*Chase* is not contrary to our holding here. We remand the case to the district court so that it may determine whether the decedent procured the insurance policies for the children's trusts. It does not follow that because the insurance policies were purchased with funds supplied by the decedent, she, in the words of the district court, "controlled the acquisition of these policies and in effect transferred them to the trusts". As we note above, that would require a finding that the trustee acted as the grantor's agent when he purchased the policies.

**6.** (b) Application of the general rule.—If the decedent within a period of 3 years ending with the date of his death (except in a case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such three year period shall be treated as having been made in contemplation of death.

26 U.S.C. § 2035(b).

**7.** The applicable Treasury Regulation at the time, § 20.2035–1(c) (1954), provided, in relevant part, as follows:

> The phrase 'in contemplation of death', as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer 'in contemplation of death' is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death ...

rization of a transfer turns on whether the motivating purpose is death-related or life-related. *United States v. Wells,* 283 U.S. at 118, 51 S.Ct. at 452, 75 L.Ed. at 875–76; *Estate of Compton v. Commissioner,* 6 Cir. 1976, 532 F.2d 1086, 1087.

The statutory presumption requires the estate to carry the burden of persuasion. *See Berman v. United States,* 5 Cir. 1973, 487 F.2d 70, 72–3. In *Berman,* the Court dealt with a transfer of flight insurance, and stated that "[t]he essence of a three-year contemplation of death case lies in the estate's ability to prove a negative, i.e., that the subject transfer was not in contemplation of death. This is seldom a light burden, and where the property transferred is so inherently death-oriented as life insurance, it is heavier." *Id. See also Estate of Compton v. Commissioner,* 532 F.2d at 1088; *Vanderlip v. Commissioner,* 2 Cir. 1946, 155 F.2d 152, 154, *cert. denied,* 1946, 329 U.S. 728, 67 S.Ct. 83, 91 L.Ed. 630. However difficult it may be to shoulder this burden when the insurance is whole life, it becomes that much more difficult when it is term life. For property such as term life insurance, which has no loan or cash surrender value and can be enjoyed only when the insured dies, is precisely the sort of testamentary substitute designed to avoid estate taxes that section 2035 sought to reach. *See Peters v. United States,* 572 F.2d at 854. *See also, Vanderlip v. Commissioner,* 155 F.2d at 154; *First Trust & Deposit Co. v. Shaughnessy,* 2 Cir. 1943, 134 F.2d 940, 943, *cert. denied,* 1943, 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 442. To carry this burden the estate must produce "substantial evidence that the decedent's dominant motive for making the transfer was to accomplish some specific lifetime purpose." *Berman v. United States,* 487 F.2d at 72.

The district court's opinion states two grounds for its holding that the transfers were not in contemplation of death: first, that because of Beverly Hope's young age, spirited activity, and the way in which she died, there was no basis for her to believe that death was imminent when she made the transfers;[8] second, that the trusts were created for the express purpose of providing a reserve of assets safe from the claims of Mr. Hope's bonding companies. The question whether a transfer is in contemplation of death is one of fact, and in a case tried without a jury, a district court's finding that the decedent's motive in transferring term life insurance was life-related can be reversed only if we are left with the firm conviction that a mistake has been made. *See, e.g., Estate of Compton v. Commissioner,* 532 F.2d at 1088; *Garrett's Estate v. Commissioner,* 2 Cir. 1950, 180 F.2d 955, 957. Here the district court concluded that the estate shouldered its heavy burden of producing substantial evidence that the transfers were not motivated by thoughts of death, but were prompted by a specific life-related purpose. After reviewing the evidence, we are left with the firm conviction that the district judge was mistaken in this finding.

By relying upon Beverly Hope's young age and good health, the district court confused expectation of imminent death with contemplation of death. Although a person who expects imminent death is more likely to have acted in contemplation of death, the courts have repeatedly held that reliance upon the decedent's apparent good health, youth, and general zest for life stops short of showing that the decedent did not act in contemplation of death. *See Berman v. United States,* 487 F.2d at 72–73; *Bintliff v. United States,* 5 Cir. 1972, 462 F.2d 403, 406; *Estate of Compton v. Commissioner,* 532 F.2d at 1088. Section 2035 is not limited to gifts *causa mortis* made in anticipation of a certain event. *United States v. Wells,* 1931, 283 U.S. 102, 117–119, 51 S.Ct. 446, 451–452, 75 L.Ed. 867, 876–77; Treas. Reg. § 20.2035–1(c). The decedent here obviously labored under no apprehension of imminent death. At the time she was mur-

---

**8.** The trial court found that "[a]t the time of her death the decedent was only 36 years old and young and vital. She enjoyed her children and her new home, and she was planning a European family vacation. Mrs. Hope was, in short, a healthy vigorous person living her normal routine and making decisions without being inspired by morbid fears of death."

dered, Beverly Hope had every reason to believe that she had many years of life ahead of her. But perceived imminence of death is not the test. The burden imposed upon the estate by section 2035 is not to prove that Beverly Hope expected to live, but to demonstrate that the transfer of the funds to the children's trusts was life-motivated. This burden the estate failed to carry, and to the extent the district court relied on the decedent's expectation of continued life, it erred as a matter of law in applying an erroneous standard. *Berman v. United States,* 487 F.2d at 73.

The estate argues that the district court was correct in finding that the goal of placing the assets beyond the reach of Grover Hope's bonding company was life-motivated, and therefore that the presumption was overcome. We disagree. Although the creation of the trusts may have had a lifetime motivation, the transfer of funds to the trustee to enable him to purchase term insurance policies in no way contributed to this end.[9] These policies had no loan or cash surrender value before the decedent's death; they increased the value of the trusts only through their testamentary effect. Consequently, no assets were protected.[10]

We are left with the firm conviction that the estate has failed to shoulder the heavy burden section 2035 imposes upon it. There was insufficient evidence to find that the gifts Beverly Hope made to the children's trusts for the purpose of obtaining term life insurance on her life were prompted by a specific life-related objective. The district

court's finding that the statutory presumption was overcome, and that the transfers were not in contemplation of death, is clearly erroneous.

## IV.

The district court's holding that the decedent did not act in contemplation of death is REVERSED. The case is REMANDED for further proceedings on the question whether a transfer occurred.

---

**9.** Citing *Hull's Estate v. Commissioner,* 3 Cir. 1963, 325 F.2d 367, the estate argues that a gift of life insurance need not be testamentary. There the decedent gave fifteen whole life insurance policies to his three daughters, and the Third Circuit reversed the Tax Court's determination that the transfers were in contemplation of death. The estate's reliance on *Hull* is misguided, however, because the life insurance policies in that case had cash surrender values in excess of $20,000 each. The situation in *Hull,* therefore, differs markedly from that here, because in *Hull* the estate was able to establish the existence of a specific life motive for the transfers.

**10.** In passing, the district court notes one other ground for its holding: Beverly Hope was a "passive" partner in the creation of the trusts and the transfer of the insurance policies. Such a reason has met with limited success. *Cf. Kahn v. United States,* N.D.Ga.1972, 349 F.Supp. 806. (a transfer of group term life insurance not made in contemplation of death when it was motivated solely by the unexplained advice of a trusted friend). We reject it here, however, for a taxpayer through sheer ignorance of his own estate cannot achieve otherwise unattainable tax consequences by permitting a lawyer or an accountant to do the thinking for him.