Elaine LEVINE, Executrix of the
Estate of Sheldon Levine,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 184–84T.

United States Claims Court.

May 5, 1986.

Seymour Goldberg, Garden City, N.Y., for plaintiff.

David Gustafson, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger M. Olsen, for defendant; Mildred L. Seidman and Gerald B. Leedom, of counsel.

## OPINION

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

#### I.

This is a suit for refund of $18,133.50 in estate taxes. The question presented is whether there should be included in the decedent's gross estate, as transfers in contemplation of death within the scope of Internal Revenue Code (I.R.C.) § 2035 (as in effect during 1978), the proceeds of two life insurance policies of which his wife was the beneficiary, the stated policy applicant and owner, but which the decedent's controlled corporation and employer, within 3 years prior to his death, caused to be issued and for which, in return for his services, it paid the applicable premiums.

Although the case is presented for decision on cross-motions for summary judgment, it is necessarily dispositive of this issue because the parties have entered into a stipulation which they agree contains all of the pertinent facts necessary for decision and neither wishes to offer further proof.[1]

Decedent died on August 20, 1978, at 41 years of age. Approximately 2 years before his death, on September 2, 1976, Security Connecticut Life Insurance Co. issued two policies on the lives of Sheldon Levine (the decedent) and one George D'Aguanno under a group insurance plan for Display Dimensions, Inc. At the time decedent was a 51 percent shareholder and president, while D'Aguanno was a 30 percent shareholder and officer of Display Dimensions. It was the intention of all concerned that Display Dimensions would pay the premiums on the policies as long as they were in effect, since the policies were an employer-provided fringe benefit to decedent and D'Aguanno, and the corporation did in fact pay them up to the date of decedent's death.

The first policy was for group decreasing term life insurance and the second for group increasing endowment life insurance. Insofar as applicable to decedent, the first had an initial face value of $100,000, which decreased annually thereafter over the next 60 years, and no cash surrender value.

---

1. In their cross-motions for summary judgment neither party has addressed the second issue of plaintiff's complaint, i.e., the disallowance of the deduction of estimated litigation expenses to be paid or incurred in this suit. Plaintiff estimates $8,000. The pleadings contain no concession by defendant as to this amount, nor do the stipulations conclusively admit their deductibility. Implicitly, the plaintiff has moved on this issue because such amount is included in the $18,133.50 it seeks on summary judgment. *See* discussion section V, *infra*.

At the date of his death the face value was $99,000. The second had an initial face amount of $1,000 with an annual increase thereafter until it reached $100,000 after 60 years. At the date of his death the face value was $2,000 and the cash surrender value $100. The premiums were $897 per annum for 56 years for the first and $946 per annum for 56 years for the second.

Although decedent's wife, Elaine Levine, signed the applications on July 21, 1976, and was the beneficiary and owner of both policies, she signed the applications at the instruction of her husband without reading them; decedent did not discuss her ownership with her, and she only learned of her ownership after her husband's death.

Defendant concedes that decedent was in apparent good health at the time he arranged for his corporation to purchase the group life insurance coverage for himself and the second-largest shareholder.

Plaintiff did not include the value of the two life insurance policies in the estate tax return for decedent. However, the Internal Revenue Service assessed an estate tax deficiency based in part thereon under the authority of I.R.C. § 2035, codified at 26 U.S.C., on the ground that the decedent had transferred the policies to his wife in contemplation of death. Plaintiff filed a timely claim for refund on or about February 1, 1983, attributing $18,133.50 of the deficiency to this issue and to a deduction for $8,000 in attorneys' fees plaintiff estimated would be incurred in prosecuting this action. The Commissioner of Internal Revenue not having acted on the claim, plaintiff timely filed this suit on April 10, 1984.

## II.

For the taxable year at issue, 1978, the Internal Revenue Code provided:

**§ 2035.  TRANSACTIONS IN CONTEMPLATION OF DEATH.[2]**

(a) *General Rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) * * * in contemplation of his death.

(b) *Application of General Rule.*—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section * * *.

Plaintiff urges that this statute is inapplicable because decedent never made a transfer of the policies to his wife; rather, the decedent's wife was the original owner and beneficiary of the policies and the decedent's employer, not the decedent, arranged for the issuance of the policies and paid the premiums.

This is an argument of pure form. First, it is well settled that a decedent who arranges for the purchase of insurance policies on his life for the benefit of another is in the same position as a decedent who purchases such a policy in his own name and then assigns it to another. In *Bel v. United States*, 452 F.2d 683, 691–92 (5th Cir.1971), *cert. denied*, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972), the Fifth Circuit stated:

> We recognize, of course, that John Bel never formally possessed any of the incidents of ownership in the accidental

**2.** The Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, § 2001(a)(5), amended § 2035 to include in one's gross estate all property transferred by him within 3 years of his death, without regard to "contemplation of death." If this amendment applied to the instant suit, plaintiff's claim and this lawsuit would have been forestalled. The amendment, however, though it does apply to decedents dying after December 31, 1976 (Sheldon Levine died in August 1978), applies only to transfers made on or after January 1, 1977. The insurance policies involved here were issued—and, defendant contends, thus "transferred"—in 1976. See § 2001(d)(1), Tax Reform Act of 1976, *supra.*

death policy. * * * [H]owever, we conclude that section 2042 and the incidents-of-ownership test are totally irrelevant to a proper application of section 2035. We think our focus should be on the control beam of the word "transfer." The decedent, and the decedent alone, beamed the accidental death policy at his children, for by paying the premium he designated ownership of the policy and created in his children all of the contractual rights to the insurance benefits. These were acts of transfer. * * * Without John Bel's conception, guidance, and payment, the proceeds of the policy in the context of this case would not have been the children's. * * * Had the decedent, within three years of his death, procured the policy in his own name and immediately thereafter assigned all ownership rights to his children, there is no question but that the policy proceeds would have been included in his estate. In our opinion the decedent's mode of execution is functionally indistinguishable.

*Bel* relied on *Chase National Bank v. United States,* 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929), which presented an analogous question of statutory interpretation, and in which the Supreme Court stated (*id.* at 337, 49 S.Ct. at 128):

> Obviously, the word "transfer" in the statute. * * * cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property. procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. Sec. 402(c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intend-

ed beneficiary on the purchaser's death * * *.

Second, it is also well settled that a decedent may be deemed a transferor of property if he causes a third-party to make the transfer by furnishing consideration to the third-party for it. *Lehman v. Commissioner,* 109 F.2d 99 (2d Cir.), *cert. denied,* 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940); *Orvis v. Higgins,* 180 F.2d 537 (2d Cir.), *cert. denied,* 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950); *McLain v. Jarecki,* 232 F.2d 211 (7th Cir.1956); *Newberry's Estate v. Commissioner,* 201 F.2d 874 (3rd Cir.1953); *In re Lueder's Estate,* 164 F.2d 128 (3rd Cir.1947). And *see also United States v. Estate of Grace,* 395 U.S. 316, 324, 89 S.Ct. 1730, 1735, 23 L.Ed.2d 332 (1969).

The transfer here was made by the decedent rather than his employer because plaintiff was president and controlling stockholder of the corporation and with his services supplied the consideration and caused the corporation to procure the policies and to pay the premiums therefor for the benefit of his wife.[3]

### III.

▌ Transfers made within 3 years of the donor's death are deemed to have been made in contemplation of death "unless shown to the contrary." I.R.C. § 2035(b). The congressional purpose behind § 2035 was to reach *inter vivos* property transfers used as substitutes for testamentary dispositions. *United States v. Wells,* 283 U.S. 102, 116–18, 51 S.Ct. 446, 451–52, 75 L.Ed. 867 (1931); *Hope v. United States,* 691 F.2d 786 (5th Cir.1982).

"The essence of a three-year contemplation of death case lies in the estate's ability to prove a negative, i.e., that the subject transfer was *not* in contemplation of death." *Berman v. United States,* 487 F.2d 70, 72 (5th Cir.1973) (emphasis in origi-

---

**3.** The stipulation recites that "the policies were an employer provided fringe benefit to George D'Aguanno and Sheldon Levine" and they were issued under a group term life insurance plan pursuant to I.R.C. § 79, "Group-term Life Insurance Purchased for Employees", which exempted the annual cost from the employees' income.

nal). Treas.Reg. § 20.2035–1(c) provides that:

> The phrase "in contemplation of death", as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition.

The statute creates a rebuttable presumption. "Death is 'contemplated' within the meaning of the statutory presumption if the dominant motive for the transfer is the creation of a substitute for testamentary disposition designed to avoid the imposition of estate taxes." *Cleveland Trust Co. v. United States*, 421 F.2d 475, 478 (6th Cir.), *cert. denied*, 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970). *See also United States v. Wells*, 283 U.S. at 116–17, 51 S.Ct. at 451; *Peters v. United States*, 216 Ct.Cl. 134, 139, 572 F.2d 851, 854 (1978). To rebut the presumption, the taxpayer must produce substantial evidence that the decedent's dominant motive for making the transfer was to accomplish some specific life purpose, *Berman v. United States*, 487 F.2d at 72, i.e., a transfer "intended by the donor 'to accomplish some purpose desirable to him if he continues to live.'" *United States v. Wells*, 283 U.S. at 119–20, 51 S.Ct. at 452. *See also American Fletcher Nat'l Bank v. United States*, 222 Ct.Cl. 117, 127, 611 F.2d 360, 364 (1979); *Peters v. United States*, 216 Ct.Cl. at 140, 572 F.2d at 854.

The burden of proof is in principle no different for life insurance than for other property, *American Fletcher v. United States*, 222 Ct.Cl. at 125, 611 F.2d at 364 *citing Landorf v. United States*, 187 Ct.Cl. 99, 408 F.2d 461 (1969), but in actuality it is made more difficult by the very nature of life insurance. In *Garrett's Estate v. Commissioner*, 180 F.2d 955, 956–57 (2d Cir.1950), Judge Learned Hand stated of a transfer of ordinary life insurance policies in a contemplation of death case:

> A conveyance of property which the grantee can by no chance use until the grantor's death will so commonly be in the main testamentary, that it is fair to infer that that was its preponderating, if not indeed its only, purpose, unless there be affirmative evidence of other contributory motives.

*See also Hope v. United States*, 691 F.2d at 791; *Peters v. United States*, 216 Ct.Cl. at 125, 572 F.2d at 854.

Plaintiff's burden becomes that much more difficult when the property is term life insurance, which has no cash surrender value and can only be enjoyed by the donee when the insured dies. This is "precisely the sort of testamentary substitute designed to avoid estate taxes that § 2035 sought to reach." *Id.*

If plaintiff is to show that these insurance policies were not transferred in contemplation of death, she must supply specific evidence that decedent's motives in effecting the transfer were predominantly life-related. *Landorf v. United States*, 187 Ct.Cl. 99, 117, 408 F.2d 461, 472 (1969). She has not. The record is devoid of any evidence regarding decedent's decision to make his wife owner of the policies, let alone evidence suggesting a life purpose.

While plaintiff suggests several motives for decedent's assignment of the policies, she offers no specific evidence to support the suggested inference that these were in fact decedent's preponderant motives.

■ (1) Plaintiff claims that decedent intended only to provide his corporation, Display Dimensions, with income tax savings from deductions of the group life insurance

premiums. She contends that absent this particular purpose, decedent would not have purchased the policies, evidenced by his general refusal to purchase life insurance.[4] To confirm the importance to him of income tax savings, plaintiff explains that a prior gift of Display Dimension stock from decedent to his children was effected primarily to achieve income tax savings by availing the corporation, conducted under Subchapter S of the Internal Revenue Code, of the children's lower tax brackets.

But decedent could achieve these same deductions whether he or his wife owned these policies. Decedent's motive to reduce his corporation's income tax burden may explain why he arranged the corporation's purchase of the policies, but it does not explain why he transferred ownership to his wife. The motive behind the *transfer* determines intent for § 2035 purposes, *Cleveland Trust Co. v. United States*, 421 F.2d at 478, and one's "motivation for purchasing the policy may not be equated with his motivation for transferring it * * *." *Estate of Schulman v. Commissioner*, 47 T.C.M. (P–H) ¶ 78,399 at 1646 (1978), *aff'd*, 607 F.2d 998 (2d Cir.1979). Moreover, the reduction of his corporation's income taxes cannot be decedent's primary motive since the corporation's costs necessarily exceeded the taxes saved; a deduction never provides 100 percent income tax savings.

There is no proof that income tax considerations underlay the transfer. No such inference can be drawn from decedent's history of rejecting life insurance coverage, nor from his limited purchase of life insurance. Neither explains why decedent *transferred* policies he did purchase.

■ (2) Second, plaintiff claims that decedent made numerous other gifts during his life, indicating motives of generosity and not testamentary intent. In *Landorf v. United States*, 187 Ct.Cl. 99, 114, 408 F.2d 461 (1966), the estate proved that a transfer within three years of death was motivated primarily by an intent to carry out "decedent's plan to distribute his property during his life time" and to help his wife in her own estate planning. *Id.* at 119, 408 F.2d 461. The evidence in *Landorf* showed that decedent, in addition to making other substantial gifts, had previously caused his family to become the owners of 14 insurance policies.

The special circumstances perceived by the court in *Landorf* simply do not exist here. Decedent never informed his wife of her ownership and she was unaware of it during his lifetime. This precludes any inference that he intended she benefit in any way from these policies during his life. And while plaintiff points out that one policy did offer a cash value build-up to a maximum of $100,000 (worth $100 at his death), this is not persuasive of life-related generosity because decedent did not tell plaintiff of its existence. Their transfer thus lacks any motive related to decedent's continued life.

Furthermore, the fact that decedent made previous substantial gifts is not itself evidence of a life-related motive so as to remove all subsequent gifts from the reach of § 2035. In *American Fletcher Nat'l Bank v. United States*, 222 Ct.Cl. at 119, 611 F.2d at 361, the Court of Claims specifically rejected the argument that *Landorf* had created any such broad rule. The court said that it had only meant that every case must turn on its facts. *Id.* Decedent here had no pattern of giving away insurance policies; in fact, he had retained the two other life insurance policies he owned. All prior gifts involved property other than insurance, i.e., stocks and savings bonds. "It becomes plain upon reflection that one motive may dispose [a decedent] to convey one kind of property, and another, another kind * * *." *Garrett's Estate v. Commissioner*, 180 F.2d at 957. Plaintiff has not shown that "the decedent's compelling, dominant motive for [this transfer] * * * was identical to, or even related to, his motive for making other gifts of property."

---

**4.** At his death, decedent owned two policies with combined value of $45,319 and had rejected other opportunities to obtain life insurance.

*American Fletcher Nat'l Bank v. United States,* 222 Ct.Cl. at 128, 611 F.2d at 366.

■ (3) Plaintiff argues that decedent simply accepted his accountant's advice to purchase the policies, and was not knowingly engaged in estate planning. This is an attempt to bring the case within *Kahn v. United States,* 349 F.Supp. 806 (N.D.Ga. 1972), in which the district court concluded a transfer of group term life insurance was not in contemplation of death because it was motivated solely by the unexplained advice of a trusted friend.

Even were the inference possible (and on this record it is not) that decedent relied wholly and blindly on others' advice to transfer the policies to his wife, this court is unwilling to adopt a result that lets a taxpayer "through sheer ignorance of his own estate * * * achieve otherwise unattainable tax consequences by permitting a lawyer or accountant to do the thinking for him." *Hope v. United States,* 691 F.2d at 792 n. 10.

■ (4) Finally, plaintiff contends that at the time of the transfer decedent was young (his additional life expectancy was 34.7 years), had young children, was purchasing a new home, and was in apparent good health. These facts are intended to prove that decedent did not anticipate death at the time of the transfer. But plaintiff confuses expectation of imminent death with contemplation of death. Section 2035 is not limited to gifts *causa mortis* made in anticipation of a certain event. *United States v. Wells,* 283 U.S. at 117–19, 51 S.Ct. at 451–52; *Hope v. United States,* 691 F.2d at 791. The question is not whether decedent expected to die shortly thereafter (which the court accepts he did not), but whether the transfer of the policy was motivated by the thought that he should make provision in the event of death. *Berman v. United States,* 487 F.2d at 72. The courts repeatedly have held that evidence of decedent's youth, apparent good health and zest for life stops short of showing that the decedent did not act from motives associated with the distribution of property at death. *Id.; Hope v. United*

*States,* 691 F.2d at 791; *American Fletcher,* 222 Ct.Cl. at 127–28, 611 F.2d at 366; *Peters,* 216 Ct.Cl. at 141, 572 F.2d at 855; *Bintliff v. United States,* 462 F.2d 403, 406 (5th Cir.1972).

In a similar case, Judge Learned Hand upheld a directed verdict against the taxpayer, observing that "the condition of [decedent's] health and his state of mind towards his death had nothing whatever to do with the case." *First Trust & Deposit Co. v. Shaughnessy,* 134 F.2d 940, 942 (2d Cir.), *cert. denied,* 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 442 (1943).

Accordingly, under the particular circumstances here presented, and the record of stipulated facts, the taxpayer is unable to present specific evidence of life motive for the transfer and has failed to rebut the statutory presumption.

## IV.

■ Plaintiff has suggested that the amount of the insurance proceeds includible in decedent's estate be reduced to reflect only that portion of the premiums deemed to be "compensation" under I.R.C. § 79. While the precise reasoning behind this contention is not stated, it appears to be that since only a portion of the premium was taxable to him as "compensation", this is the maximum that was decedent's to control and to transfer.

This argument is without merit. Section 79 does not provide that only a portion of the fringe benefit, measured by the premium, is compensation; it provides that only a portion of the compensation is taxable. More importantly, the treatment of compensatory fringe benefits for income tax purposes has no bearing on whether the employee has effected a direct or indirect transfer of the policy for estate tax purposes.

## V.

■ The second count of plaintiff's complaint seeks the allowance of a deduction under I.R.C. § 2053 of litigation expenses, including attorney's fees. The I.R.S. had

142

disallowed all estimated attorney's fees above those actually incurred at the time the estate tax return was filed. The parties have not argued the propriety of this element of plaintiff's case in their cross-motions. However, it is settled law that these expenses are allowable to the estate. *Rothgery v. United States*, 201 Ct.Cl. 183, 475 F.2d 591 (1973). *See also Cleveland v. Higgins*, 148 F.2d 722 (2d Cir.), *cert. denied*, 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428 (1945); *Old Colony Trust Co. v. United States*, 300 F. Supp. 1032 (D.Mass.1969), *aff'd*, 423 F.2d 601 (2d Cir.1970). Accordingly, the plaintiff is entitled to deduct from the gross estate the expenses incurred in pursuing this claim.

## VI.

Plaintiff's motion for summary judgment is DENIED to the extent of the tax liability owing to inclusion of the insurance policies, and defendant's motion for summary judgment is GRANTED to the same extent. The parties are directed to provide to the court, within 30 days, a stipulated amount of the estate tax to be refunded to plaintiff due to the deduction of allowable litigation expenses actually paid or incurred by plaintiff, absent which the court will set a date for trial of this issue.